# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

No. 14-55020

_____

NORMAN SHAW,

*Plaintiff-Appellant,*

v.

U.S. BANK, N.A. AS TRUSTEE, SUCCESSOR IN INTEREST TO BANK
OF AMERICA, N.A., AS TRUSTEE SUCESSOR BY MERGER TO
LASALLE BANK, N.A., AS TRUSTEE FOR WAMU MORTGAGE
PASS-THROUGH CERTIFICATES SERIES 2006-AR11 (sued as BANK
OF AMERICA, N.A. and U.S. BANK, N.A.)
*Defendants-Appellees.*

_____

## APPELLANT'S REPLY BRIEF

_____

On Appeal from the United States District Court for the
Southern District of California, Case No. 3:12-CV-1207-DMS-BLM

_____

**NORMAN SHAW,** SBN 227777
308 Corto Street
Solana Beach, California 92075
Tel: (858) 481-5200

**CHRIS FORD,** SBN 239376
cford@azbar.org
**LAW OFFICE OF CHRIS FORD**
125 East Coronado Road
Phoenix, Arizona 85004
Tel: (602) 688-5571
Fax: (888) 447-3714

*Attorneys for Plaintiff-Appellant*

# TABLE OF CONTENTS

Introduction ..................................................................................................1

Argument ......................................................................................................3

I.   The Court Should Deem as Waived All Portions of Lender's Brief
     That Fail to Comply With Court Rules ............................................3

     A. The record does not support Lender's assertions that Mr. Shaw
        submitted no evidence of ability to tender ...............................3

     B. Lender urges a novel legal theory for evaluating ability to tender
        in TILA matters but cites no statutory or case authority in
        support of the theory...............................................................5

     C. Lender's brief includes statements of fact that are untrue or
        misleading and lacking in support in the record ........................6

        1. Lender mischaracterizes relevant evidence admitted by the
           trial court regarding the value of Mr. Shaw's home as
           "personal opinion" ...........................................................6

        2. Lender's representation that Mr. Shaw seeks to "reverse"
           the holding in *Yamamoto* is false and unsupported ...............8

II.  Lender's Call for Broad Interpretation of *Yamamoto* Lacks Factual
     and Legal Grounding, Particularly in Light of This Court's Recent
     Ruling in *Merritt v. Countrywide Fin. Corp* ...................................9

     A. Lender cannot show that *Yamamoto* requires actual tender,
        rather than a mere showing that the borrower can tender, as a
        prerequisite for a TILA rescission case to move past summary
        judgment and to trial .............................................................11

        1. *Merritt* clarifies that *Yamamoto* requires only *evidence* of
           ability to tender, and therefore the district court's judgment
           improperly extends *Yamamoto*..........................................11

        2. Cases cited with approval in *Merritt* support Mr. Shaw's
           positions that he may use the value of his house as tender and
           *Yamamoto* is distinguishable ............................................13

        3. The "equities" that favor creditors according to *Yamamoto*,
           including that the lender may be left an "unsecured creditor"
           *in a bankruptcy* if rescission is granted, are not present here .............18

        4. Per the analysis in *Merritt*, Lender cannot show that that the
           equities weigh in its favor ..................................................21

        5. The *Merritt* Court, reconciling a split of authority within the
           circuit, abrogated the position Lender adopted that
           allegation of ability to tender is required at the pleading stage...........23

     B. By advocating for reversal of the rescission sequence when
        ability to tender is "not clear from the evidence," Lender relies
        on a standard not found in *Yamamoto*........................................25

i

    **C. Further cases lender cites do not support extension of *Yamamoto* to the present facts** ........................................................................ **28**

**III. Lender's references to Mr. Shaw's bankruptcy are unhelpful because Mr. Shaw did not claim he had cash in hand, but he did possess adequate equity in the property to cover tender, which the trial court acknowledged** ........................................................................ **30**

**Conclusion** ........................................................................ **31**

**Certificate of Compliance** ........................................................................ **32**

**Certificate of Service** ........................................................................ **33**

# TABLE OF AUTHORITIES

## CASES

*In re O'Brien*, 312 F.3d 1135 (9th Cir. 2002)......................................................3

*Alaska Right to Life v. Feldman*, 504 F.3d 840 (9th Cir. 2007).........................10

*Wilkes v. Reyes*, 5 F.3d 412 (9th Cir. 1993).........................................................4

*Merritt v. Countrywide Fin. Corp.*, 759 F.3d 1023 (9th Cir. 2014)......... passim

*Burrows v. Orchid Island TRS, LLC.*, No. 07CV1567, 2008 U.S. Dist. LEXIS
21120 (S.D. Cal. Mar. 18, 2008)....................................................................13, 14

*Williams v. Saxon Mortg. Co.*, no. 06-799-WS-B, 2008 U.S. Dist. LEXIS 131
(S.D. Ala. Jan. 2, 2008).............................................................................14, 15, 16

*Prince v. U.S. Bank*, N.A., no. 08-574-KD-N, 2009 U.S. Dist. LEXIS 133290
(S.D. Ala. Aug. 25, 2009) ..................................................................................17

*Prince v. U.S. Bank Nat'l Ass'n*, no. 08-574-KD-N, 2009 U.S. Dist. LEXIS
84304 (S.D. Ala. Sept. 14, 2009) ......................................................................17

*Jones v. REES-MAX, LLC*, 514 F.Supp.2d 1139 (D. Minn. 2007)..............17, 18

*FDIC v. Hughes Dev. Co.*, 684 F.Supp. 616 (D. Minn 1988) ...........................18

*Palmer v. Wilson*, 502 F.2d 860 (9th Cir. 1974).............................................18, 27

*LaGrone v. Johnson*, 534 F.2d 1360 (9th Cir. 1976).......................18, 19, 20, 21

*Kratz v. Countrywide Bank*, no. CV08-1233, 2009 U.S. Dist. LEXIS 86479
(C.D. Cal. Sept. 21, 2009).......................................................................20, 28, 29

*Botelho v. U.S. Bank*, N.A., 692 F.Supp.2d 1174 (N.D. Cal. 2010)..................24

*Alcaraz v. Wachovia Mortg.*, no. CV F 08-1640 LJO SMS, 2009 U.S. Dist.
LEXIS 34009, at *11-*12 (E.D. Cal. Jan. 21, 2009) ..................................24, 25

*In re Okosisi*, 451 B.R. 90 (Bankr. D. Nev. 2011)............................................27

*Horton v. Cal. Credit Corp. Ret. Plan*, 835 F.Supp.2d 879 (S.D. Cal. 2011) ..................27

*Woodworth v. Bank of Am.*, *Nat.'l Ass'n.*, No. 09-3058-CL, 2011 U.S. Dist.
LEXIS 43255, at *29-*30 (D. Ore March 23, 2011) ........................................28

*Briosos v. Wells Fargo Bank*, 737 F.Supp.2d 1018 (N.D. Cal. 2010) ........................29, 30

*Yamamoto v. Bank of N.Y.*, 329 F.3d 1167 (9th Cir 2003) ...................................... passim


**STATUTES**

11 U.S.C. § 506 ...............................................................................................21

11 U.S.C. § 507 ...............................................................................................21


**OTHER AUTHORITY**

Fed. R. App. P. 28(a)(8)(A). ..........................................................................3

Fed. R. App. P. 28(b). .....................................................................................3

9th Cir. R. 28-1(a). .........................................................................................4

Fed. R. Civ. P. 11(b) .......................................................................................24

Fed. R. Civ. P. 56(a) .................................................................................5, 15

69 Fed.Reg 16769, 16775 (2004) .................................................................17

1 Dan B. Dobbs,  Law of Remedies: Damages—Equity—Restitution § 4.8, at
463 (2d ed. 1993) ...........................................................................................24

## INTRODUCTION

This case revolves around whether the Court should extend a rule in this Circuit, enunciated in *Yamamoto v. Bank of New York*, 329 F.3d 1167 (9th Cir. 2003) ("*Yamamoto*"). *Yamamoto* held that courts ruling at the summary judgment stage of litigation under the Truth in Lending Act ("TILA") have discretion to condition rescission on the borrower's ability to tender the net loan value, when it is clear from the evidence that the borrower cannot tender.

Defendant and Appellee ("Lender")[1] asks this Court to extend the rule in *Yamamoto* to cases in which it is not clear from the evidence whether the borrower is able to tender. This distinction perhaps seems fine, but it is important, because Lender would have the Ccourt extend the rule, for example, to cases in which the plaintiff has submitted some evidence that he can repay the net value of the loan upon rescission, but whether he actually can repay it remains unclear.

Moreover, the rule Lender seeks would upset a court's analysis in summary judgment matters. Summary judgment is appropriate when, based on the evidence, no genuine dispute of material fact exists, so judgment may be made as a matter of law. The rule in *Yamamoto* comports with this

---

[1] See Appellant's Opening Brief ("AOB") 1 n.1 for discussion of appellee's full name.

standard: If it is clear from the evidence that the borrower is unable to tender, there is no genuine dispute over such ability, and *Yamamoto* allows a court to grant the lender's motion for summary judgment unless the borrower later shows ability to tender.

However, if the borrower adduces even a small quantum of evidence showing ability to tender, and the lender disputes that evidence, then there is a genuine dispute of facts and summary judgment is inappropriate. Thus, Lender's proposed extension of the rule in *Yamamoto* to cases where the evidence does not make clear that borrower is unable to tender – i.e., there is at least some evidence that the borrower court tender – would create conflicting standards in summary judgment litigation in TILA cases.

Here, district court ordered plaintiff and appellant Norman E. Shaw ("Mr. Shaw") to deposit $1.2 million with the court or post bond at the approximate cost of $50,000 for his case to proceed past summary judgment, even though Mr. Shaw submitted admissible evidence of his ability to tender. The only way Mr. Shaw could raise the money for tender would be to sell the secured property. Forcing him to do so before trial would moot the case, because loan would be repaid on sale of the propoerty. Thus, Mr. Shaw needs a rescission order before he can sell his house without mooting his case. The District Court erred in requiring Mr. Shaw to take pay money

before trial, because *Yamamoto* requires only that a borrower make a showing, not take such an action.

Nine days after Mr. Shaw filed his opening brief in this case, a panel of this Court issued its ruling in *Merritt v. Countrywide Fin. Corp.*, 759 F.3d 1023 (9th Cir. 2014) ("*Merritt*"), which clarifies the rule *Yamamoto* requiring a borrower to show ability to tender, not hand over a sum of money, to get past summary judgment. As explained below, the *Merritt* decision supports Mr. Shaw's position in this appeal, and for the reasons stated herein and in Mr. Shaw's opening brief, this Court should reverse the judgment.

## ARGUMENT

**I.      The Court Should Deem as Waived All Portions of Lender's Brief That Fail to Comply With Court Rules.**
        **A. The record does not support Lender's assertions that Mr. Shaw submitted no evidence of ability to tender.**

Appellate rules require that briefs contain references to the record in support of factual assertions on which an appellant relies and citations to legal authority to undergird appellant's legal arguments. Fed. R. App. P. 28(a)(8)(A). These rules also apply to appellees, such as Lender. Fed. R. App. P. 28(b). Ninth Circuit courts consider such rules to be "quite clear, and written in mandatory terms." *In re O'Brien*, 312 F.3d 1135, 1136 (9th Cir. 2002).

The rules of this circuit provide that briefs failing to conform to the above-cited procedural rules "may be stricken by the Court." 9th Cir. R. 28-1(a). Accordingly, if a party fails to support "any issue raised" with appropriate citation to legal authorities and portions of the record, "that issue will be deemed waived." *Wilkes v. Reyes*, 5 F.3d 412, 417 (9th Cir. 1993).

Here, Lender makes numerous factual and legal assertions it fails to support with references to the record or legal authority. For example, Lender represents, with no citation to the record, that Mr. Shaw was in no way able to show that he could return the net value of the loan to the lender upon rescission under TILA. For example, Lender states that Mr. Shaw "failed to demonstrate an ability to tender, and evidence shows [his] inability to tender." Appellee's Answering Brief ("AAB") 2; *see also* AAB 19-20 (statement without reference to the record that Mr. Shaw "failed to show that [he] would not be 'judgment proof' if rescission was adjudicated in [his] favor . . . ."). Because these statements lack citation to the record, the Court should deem them and any argument based thereon to be waived.

Even if the Court elects not to deem as waived such statements, it should disregard them as unpersuasive, considering Lender ultimately concedes – with citation to the record – that the district court admitted the very sort of evidence it earlier asserted Mr. Shaw "failed to show." Compare

AAB 19-20 with AAB 22 (trial court sustained Lender's objection to appraiser's valuation of Mr. Shaw's home, "but allowed" evidence Mr. Shaw proffered regarding the property's value).

### B. Lender urges a novel legal theory for evaluating ability to tender in TILA matters but cites no statutory or case authority in support of the theory.

Lender further appears to create a legal standard for a party proposing to use the equity in his house for tender in a TILA rescission case. Lender represents that a borrower must show "that the property was listed for sale, that a buyer willing to pay [the tender amount] existed, and was willing to wait until the end of an appeal of the case to purchase the Subject Property." AAB 22; *see also* AAB 23 (evidence of "pending refinance transaction" required), 26 (Mr. Shaw "did not submit any evidence of a property listing, a willing buyer, a pending sale, or any reasonable time for a speculative sale").

Lender cites no legal authority for this apparent standard that to demonstrate a genuine dispute as to material facts regarding tender so as to get his case past summary judgment, Fed. R. Civ. P. 56(a), a borrower would have to prove the existence of a willing buyer, pending sale, pending refinance and/or property listing. In the absence of such citation the Court should strike or treat as waived Lender's purported legal standard and any arguments that rely thereon.

### C. Lender's brief includes statements of fact that are untrue or misleading and lacking in support in the record.

#### 1. Lender mischaracterizes relevant evidence admitted by the trial court regarding the value of Mr. Shaw's home as "personal opinion."

Lender further makes untrue or misleading statements purported as fact that this Court should similarly strike or deem as waived for lacking support in or reference to the record. For example, Lender repeatedly refers to evidence of the value of Mr. Shaw's home, as discussed in the context of its favorable valuation to the agreed-upon $1.2 million tender amount,[2] as Mr. Shaw's "personal opinion of the Subject Property." AAB 10; *see also* AAB 21 ("personal valuation of the Subject Property"), 22 (same), 23 ("mere[] speculation"). All of these references lack citation to the record except two.

Regarding those two references, the citations Lender uses are misleading and ultimately do not support the "facts" Lender purports as true. For example, Lender cites the Order in support of its characterization of Mr. Shaw's valuation of his home as based on "personal opinion." AAB 22 (citing AER 9 n.3). Lender also cites Mr. Shaw's opening brief as support for this characterization. AAB 10 (citing AOB 27).

---

[2] AOB 18 & n.7; AAB 20 (tender amount "undisputed"); AER 9.

However, Mr. Shaw submitted evidence that his home was worth between approximately $1.65 million and $2.08 million, based on his review of the local market, comparing nine similar neighborhood homes. AER 70-71, 127-28, 134-36; AOB 18, 46 n.12, 48, 56. The court admitted this evidence over Lender's objections, acknowledging that the value of Mr. Shaw's home as demonstrated by the evidence and Mr. Shaw's testimony "more than covers tender." AER 9 n.3; *see* AER 70-71, 88, 101-02, 127; AOB 48. Lender, in contrast, offered no evidence in rebuttal.

Mr. Shaw's opening brief – at the page cited by Lender – recites that Mr. Shaw submitted the above-noted evidence and the court admitted it over Lender's objection. AOB 27 (cited in AAB 10). Meanwhile, the portion of the Order Lender cites shows that the trial court sustained Lender's evidentiary objections only with regard to evidence of an appraisal Mr. Shaw obtained, but not with regard to evidence supporting Mr. Shaw's own valuation. AER 9 n.3, 134-36.

Furthermore, Mr. Shaw made clear in summary judgment litigation that federal rules of evidence allow a litigant to establish the fair market value of real property without opinion testimony. AER 127 and authorities cited therein. Accordingly, the district court was correct to admit the evidence Mr. Shaw adduced regarding the value of his home. AER 9 n.3,

134-36. Thus, Lender's assertion that this evidence is "not" evidence of ability to tender, AAB 26, is frivolous.

In sum, Lender's repeated reference to the valuation as a "personal opinion" not only is misleading and untrue, but it lacks any grounding to the record, and thus any such references should be stricken or deemed waived, along with any arguments Lender make based on those references.

Moreover, by insisting that Mr. Shaw's deposition testimony regarding the value of his home was "not" evidence of ability to tender, *e.g.* AAB 26, **Lender appears to challenge the trial court's evidentiary findings on appeal, an odd position for an appellee seeking affirmance of the judgment**. AAB 10, 30. The proper "remedy" for Lender's seeming dissatisfaction with the trial court's evidentiary findings would have been for Lender to challenge them in a cross-appeal, a path Lender chose not to take.

## 2. Lender's representation that Mr. Shaw seeks to "reverse" the holding in *Yamamoto* is false and unsupported.

Additionally, Lender makes the false representation that Mr. Shaw's appeal constitutes a "request to reverse the holdings of *Yamamoto*." AAB 2; *see also* AAB 26 (Mr. Shaw urges court to adopt a position "opposite to *Yamamoto*"). These assertions directly contradict unambiguous statements in

Mr. Shaw's opening brief. AOB 3, 41; *see*, *e.g.*, AER 45-48, 69-71 (Yamamoto is distinguishable, not subject to reversal).

For Example, Mr. Shaw's opening brief states, "In this appeal, Mr. Shaw **seeks not to obtain a reversal of *Yamamoto***, but rather to distinguish it from the present matter." AOB 3 (emphasis added). The brief further states, "Mr. Shaw does not request this court to reverse its ruling in *Yamamoto*, but rather to limit its holding so that it not apply in cases such as the present matter . . . ." AOB 41 (emphasis omitted); *see also* AOB 41 n.11 (recognizing that to obtain a reversal of *Yamamoto* would require further litigation before an en banc panel of this court or the Supreme Court).

Lender's representation that Mr. Shaw seeks to "reverse" *Yamamoto* in this appeal lacks any citation to or support in the record. Accordingly, it should be stricken or treated as waived.

## II.     Lender's Call for Broad Interpretation of *Yamamoto* Lacks Factual and Legal Grounding, Particularly in Light of This Court's Recent Ruling in *Merritt v. Countrywide Fin. Corp.*

As summary of the argument contained in this part: This Court should reject lower courts' extension of *Yamamoto* – which applies where the evidence makes clear than borrowers cannot tender "no matter what," *Yamamoto*, 329 F.3d at 1173 – to justify granting summary judgment in cases in which (1) the evidence shows ability to tender the value of the

underlying asset because the asset value exceeds the tender amount, or (2) at minimum, a genuine dispute of material fact exists regarding whether the borrower can tender.

This Court's recent decision in *Merritt*, as explained below, supports Mr. Shaw's position that *Yamamoto* is limited to cases in which it "is clear from the evidence" that the borrower is unable to tender "no matter what." *Merritt*, 759 F.3d at 1031; *Yamamoto*, 329 F.3d at 1173. As further explained herein, Lender's position that the court had "the power and discretion" under *Yamamoto* not only to require the borrower to show he could tender back the net loan proceeds, but also to order him to pay the $1.2 million tender amount or post a bond to cover that amount, AAB 17, is unsupported by the very case authority it cites.

In short, Lender claims that *Yamamoto* requires an act. Relevant case authority shows, however, that *Yamamoto* merely requires a showing. *Compare* AAB 17 *with* AOB 21. As explained more fully below, this court, reviewing this issue de novo, *Alaska Right to Life v. Feldman*, 504 F.3d 840, 848 (9th Cir. 2007); AOB 41-42, should reverse the judgment with instructions to enter denial of summary judgment in favor of Lender and allow the case to proceed to trial on the merits.

**A. Lender cannot show that *Yamamoto* requires actual tender, rather than a mere showing that the borrower can tender, as a prerequisite for a TILA rescission case to move past summary judgment and to trial.**

  **1. *Merritt* clarifies that *Yamamoto* requires only *evidence* of ability to tender, and therefore the district court's judgment improperly extends *Yamamoto*.**

This Court's recent ruling in *Merritt* clarifies *Yamamoto*, holding that – contrary to Lender's and the district court's position that a borrower actually must hand over the loan proceeds so as to move his case past summary judgment and to trial, *see* AAB 27-30; AER 3, 9, 11 – "**district courts may, if warranted by the circumstances of the particular case, require the obligor to provide evidence of ability to tender as a condition for denial of a summary judgment motion advanced by the creditor**." *Merritt*, 759 F.3d at 1030-31 (Citing *Yamamoto*, 329 F.3d at 1071-73) (emphasis added).

*Yamamoto*, the *Merritt* Court notes, "concluded that where 'it is clear from the evidence that the borrower lacks capacity to pay back what she has received (less interest, finance charges, etc.), the court does not lack discretion to do before trial what it could do after,' i.e., refuse to enforce rescission." *Id*. at 1031 (quoting *Yamamoto*, 329 F.3d at 1173). "In so ruling," the *Merritt* Court explains, "*Yamamoto* relied on earlier cases which had

permitted judges **after a resolution of the TILA claim** on the merits to condition rescission on tender." *Id*. (emphasis added).

Here, the district court denied summary judgment with regard to rescission, AER 9, leaving for trial actual resolution of Mr. Shaw's rescission claim. **The denial of summary judgment did not resolve the TILA claim**. This fact makes the cases on which *Yamomoto* relies, and *Yamamoto* itself – which hold that a court may condition rescission on tender if, after the TILA claim has been resolved, the evidence makes is clear the borrower cannot pay back the loan, *see Merritt*, 759 F.3d at 1031 – distinguishable from the present matter, in which the TILA claim was not resolved and Mr. Shaw did submit admissible evidence that he could tender the loan value. AER 9, 88, 135-36. Therefore, those cases offer no support for reversal of the rescission-tender sequence in this case.

In conclusion, *Merritt* makes clear that the district court's requirement that Mr. Shaw spend $50,000 to post bond or deposit with the court $1.2 million for the opportunity to get to trial, AER 3, 9, 49, 68, 74, 86-87, is legally untenable. Accordingly, the district court's judgment – which explicitly relied on *Yamamoto*, *see* AER 9 – represents an unwarranted extension of that ruling and should be reversed.

### 2. Cases cited with approval in *Merritt* support Mr. Shaw's positions that he may use the value of his house as tender and *Yamamoto* is distinguishable.

Relevant to the instant matter, *Merritt* recognizes that if, in the context of a meritorious TILA rescission or damages case, the creditor relinquishes its security interest in the property as envisioned under the Act, "the obligor may then be able to refinance or sell the property and thereby repay the original lender." *Merritt*, 759 F.3d at 1032. Further, *Merritt* cites with approval two TILA cases in which the borrower proposed using the secured real property as tender or to secure repayment of the original loan. *Id*.

The court in the first case noted that the borrower – as is the case with Mr. Shaw here – "[c]learly . . . can try to sell or refinance the property with another lender, should it become necessary to return loan proceeds to" the lender. *Burrows v. Orchid Island TRS, LLC.*, No. 07CV1567, 2008 U.S. Dist. LEXIS 21120, at *18 (S.D. Cal. Mar. 18, 2008) (citing *Yamamoto*, 329 F.3d at 1173); AER 71, 74. This opinion was issued at the dismissal stage, *Burrows*, 2008 U.S. Dist. LEXIS 21120, at *1-*2, but the principle it enunciates is equally valid in summary judgment litigation: Requiring a TILA plaintiff to return the loan amount at dismissal – or as here, at the summary judgment stage – inappropriately denies the plaintiff the opportunity to try rescission on the merits, following which a successful

plaintiff could sell or refinance the property to pay back the rescinded loan. *See id*. at *18.

In the other case, a "heavily-litigated" summary judgment matter, the court denied summary judgment to the lender because the lender "failed to adduce any record that might establish . . . a lack of capacity [to tender], and has failed adequately to rebut [the borrowers'] *prima facie* showing that they will be able to refinance the loan once [the lender's] lien is removed." *Williams v. Saxon Mortg. Co*., no. 06-799-WS-B, 2008 U.S. Dist. LEXIS 131, at *1-*2,*24-*25 n.10 (S.D. Ala. Jan. 2, 2008).

*Williams* is factually similar to the present case, because Mr. Shaw adduced evidence admitted by the district court that the value of his house significantly exceeded the tender value, *e.g.* AER 9, 88, 134-36, while Lender submitted no evidence of the home's value to rebut Mr. Shaw's assertion that the value was more than sufficient to cover tender. Thus, the present matter, like *Williams*, "**bears little similarity to *Yamamoto* because its factual posture is markedly different**." *Williams*, 2008 U.S. Dist. LEXIS 131, at *24-*25 n.10 (emphasis added).

Unlike the district court in the instant matter, **the *Williams* Court found that under *Yamamoto* it must be "clear from the evidence that the borrower lacks the capacity to pay back what she has received,**" and it

denied summary judgment to the lender because "[h]ere . . . no such clarity exists." *Id*. (emphasis added).

As such, *Williams* directly supports Mr. Shaw's position on this appeal: **extending *Yamamoto* to condition rescission on tender where the evidence is not clear that the borrower cannot tender – or where, as here, the borrower has shown with admissible evidence that he can return the net value of the loan – lacks legal grounding**. *Id*.; AOB 46-49.

In *Williams*, the lender sought an order that the plaintiffs "prove within 30 days that they had the wherewithal to repay the loan immediately as a single lump-sum payment," and if the plaintiffs failed to make such a showing, grant summary judgment in the lender's favor. *Williams*, 2008 U.S. Dist. LEXIS 131, at *18. The court found this request to be "inappropriate for three distinct reasons." *Id*. at *19.

First, "it is black letter law" that the party seeking summary judgment bears the burden of showing that based on the evidence there is no genuine dispute of material fact to be decided at trial. *Id*. at *20; Fed. R. Civ. P. 56(a). **Rather than meeting that burden, the lender "would shift that burden to the [borrowers]. Such a gambit is a perversion of bedrock summary judgment protocols**." *Williams*, 2008 U.S. Dist. LEXIS 131, at *20. The court further notes that the lender should have elicited relevant evidence

related to the secured property's value during discovery, which the mortgage company in *Williams* failed to do and Lender in the present matter neglected to do. *See id*. at 20-21.

Secondly, **as Mr. Shaw did in the instant case, the plaintiffs in *Williams*, though not required to do so, "c[a]me forward with an adequate showing of their ability to repay the loan if rescission is granted**." *Id*. at *21. The court further noted, "Based on this unrebutted showing by plaintiffs, there is no reason to believe (and certainly no evidence of record proffered by [the lender] to suggest) that suitable arrangements could not be made for [the lender] to be made whole for the full balance of the loan within a reasonable time period if rescission were ordered." *Id*. at *21-*22 (parenthetical in the original).

Finally, the *Williams* Court refused to "extinguish plaintiffs' right of rescission altogether" based on "inchoate, undeveloped fears that they might prove unable to repay" the loan. *Id*. at *22-*23. Also worth noting, "The *Williams* Court found it inappropriate even at the summary judgment stage to 'deviate from th[e] sensible, efficient methodology' described in official staff interpretations to TILA regulations as follows: 'Where the consumer's right to rescind is contested by the creditor, a court would normally determine whether the consumer has a right to rescind and determine the

amounts owed **before** establishing the procedures for the parties to tender any money or property.'" *Prince v. U.S. Bank*, N.A., no. 08-574-KD-N, 2009 U.S. Dist. LEXIS 133290, at *16-*17 (S.D. Ala. Aug. 25, 2009)[3] (quoting 69 Fed.Reg 16769, 16775 (2004)) (emphasis added).

In summary, *Williams*, cited with approval in this Court's recent decision in *Merritt*, militates for reversal here because cases in which the borrower has adduced admissible evidence that his home is of greater value than the tender amount "bear little similarity to *Yamamoto*"; conditioning rescission on tender where the lender offers no proof that the borrower is unable to tender inappropriately shifts the burden in summary judgment litigation to the non-movant; and where the borrower adduced relevant evidence of his home value, the court will not reverse the rescission sequence based on "inchoate" fears that a lender might not be repaid.

Moreover, courts in TILA cases have discretion to allow a borrower "reasonable time to pay the mortgage amount." *Jones v. REES-MAX, LLC*, 514 F.Supp.2d 1139, 1146 (D. Minn. 2007) (denying summary judgment in favor of the lender). One court, exercising its equitable powers, gave the

---

[3] This Report and Recommendation by a magistrate judge was adopted by district court at *Prince v. U.S. Bank Nat'l Ass'n*, no. 08-574-KD-N, 2009 U.S. Dist. LEXIS 84304 (S.D. Ala. Sept. 14, 2009).

borrower a year to tender the net value of the loan. *Id*. (citing *FDIC v. Hughes Dev. Co*., 684 F.Supp. 616, 626 (D. Minn 1988)).

> ### 3. The "equities" that favor creditors according to *Yamamoto*, including that the lender may be left an "unsecured creditor" *in a bankruptcy* if rescission is granted, are not present here.

Courts considering reversal of the rescission-tender sequence in TILA cases should "take into account 'the equities present in a particular case, as well as consideration of the legislative policy of full disclosure that underlies [TILA] and the remedial-penal nature of the private enforcement provisions of the Act.'" *Merritt*, 759 F.3d at 1031 (quoting *Palmer v. Wilson*, 502 F.2d 860, 862 (9th Cir. 1974)). One decision on which *Yamamoto* relies counsels that where the TILA violations "were not egregious and the equities heavily favor the creditors," conditioning rescission on tender is appropriate. *LaGrone v. Johnson*, 534 F.2d 1360, 1362 (9th Cir. 1976) (*quoted in Yamamoto*, 759 F.3d at 1171); *see Merritt*, 759 F.3d at 1031; AAB 14.

Lender expresses concern that in the present case rescission must be conditioned on tender because to do otherwise "would [leave the creditor] in an unsecured position . . . ." AAB 14 (quoting *Yamamoto*, 329 F.3d at 1171) (internal quotation marks omitted). This quote, however, does not tell the whole story. The *Yamamoto* Court was concerned with leaving a creditor unsecured in the context of "**the borrower's intervening bankruptcy**."

*Yamamoto*, 329 F.3d at 1171 (emphasis added). This fact is significant because the Yamamotos' bankruptcy still was proceeding as their TILA challenge progressed. *See id*. at 1169 & n.1 (discussing the bankruptcy trustee's substitution as plaintiff "in [the Yamamotos'] stead").

In *LaGrone*, on which Yamamoto relies, the borrower declared bankruptcy as her TILA case proceeded. *Lagrone*, 534 F.2d at 1361. The court reversed the rescission-tender sequence under TILA because to leave the lenders "as unsecured creditors in Mrs. LaGrone's intervening bankruptcy" would produce "unduly harsh penalties" where the TILA violation was not egregious. *Id*. at 1361, 1362. *Yamamoto* and *LaGrone* are unpersuasive here because, as Lender and the court notes, Mr. Shaw's related adversary proceeding in bankruptcy court concluded before the instant matter was filed in district court. AAB 4; AER 5, 14, 299, 310, 319; ARJN, Exhibit 2, at 2.

It is true that Mr. Shaw's underlying bankruptcy proceeded into 2013, as Lender points out. AAB 19-20. However, the bankruptcy was dismissed on or about September 25, 2013, prior to entry of judgment in Lender's summary judgment motion. Exhibit 1 to ARJN, at 10-11; AER 1. Notably, the district court's only reference to Mr. Shaw's bankruptcy concerns the adversary proceeding, not the underlying bankruptcy, and the court does not

base its order conditioning rescission on tender on any concern regarding leaving Lender as an "unsecured" creditor in Mr. Shaw's bankruptcy. *See* AER 5-9. Moreover, to the extent of any discussion at the September 6, 2013 hearing regarding Lender's concern that rescission would leave it "unsecured," **that discussion did not relate to Mr. Shaw's bankruptcy**. *See* AER 89-90.

Moreover, *Kratz v. Countrywide Bank*, no. CV08-1233, 2009 U.S. Dist. LEXIS 86479 (C.D. Cal. Sept. 21, 2009), cited by Lender, is unhelpful. (AAB 16 (incorrectly cited by Lender as "*Katz v. Countrywide Bank*"). In *Kratz*, the borrower received a discharge of the loan in bankruptcy, leaving her with no personal liability on the mortgage, and was "upside down" on the loan amount. *Kratz*, 2009 U.S. Dist. LEXIS 86479, at \*5, \*18. Here, in contrast, Mr. Shaw received no discharge of the loan, and the value of the home is greater than that of the tender amount. *E.g.* AER 9, 88, 134-36. *Kratz* thus is distinguishable on its facts.

In sum, the district court did not base its decision on concerns expressed in in *LaGrone* and *Yamamoto* over leaving a lender an "unsecured creditor" in the context of a bankruptcy proceeding. Such concerns would be applicable only where the lender's creditor status under the Bankruptcy Code could be modified in the context of a Bankruptcy proceeding,

potentially affecting its rights under the Code. *See*, *e.g.*, 11 U.S.C. § 506, 507; *LaGrone*, 534 F.2d at 1361; *Yamamoto*, 329 F.3d at 1171.

**Such concerns are not relevant here**, because Mr. Shaw was no longer was in bankruptcy by the time the district court ruled in the instant matter, and even though there was some litigation in the bankruptcy court during 2013 concurrent with the litigation here, it **solely concerned dismissal of the bankruptcy or attorney fees**. *See* Exhibit 1 to ARJN, at 8-13 (only issues in Mr. Shaw's bankruptcy matter after September 2012 concerned dismissal and fees for the trustee and her attorney).

In short, the factual predicate for reversing the TILA rescission sequence based on concerns that the creditor may be left "unsecured" in bankruptcy, as Lender raises in its brief, AAB 14, 19, is not present here, and even if it were, the district court appears not to have considered it in reaching its judgment. Therefore, any argument Lender advances in support of the order reversing the rescission-tender sequence under TILA in this case that relies on the concern that it will be left an unsecured creditor is irrelevant or at minimum unpersuasive.

### 4. Per the analysis in *Merritt*, Lender cannot show that that TILA equities weigh in its favor.

*Merritt* summarizes the equities that "might" be considered in TILA rescission analysis as whether (1) the lender's TILA violations were

egregious, (2) the borrower went into bankruptcy and (3) "the borrower's ability to repay the proceeds (including, perhaps, whether that ability to repay was itself dependent upon a rescission order because without such an order, the obligor could not refinance or sell the property)." *Merritt*, 759 F.3d at 1031 (parenthetical in the original) (citing *Yamamoto*, 329 F.3d at 1171, 1173). Here, Lender argues that such equities weigh in its favor but does not make an adequate showing. *See generally* AAB 17-23. For example, even if Lender's TILA violations were not egregious, rescission in this case, as discussed above, would not render Lender an unsecured creditor in Mr. Shaw's now-closed bankruptcy matter. Thus, the first two equities do not, in combination, weigh in Lender's favor.

Significantly, the third equity, i.e. ability to repay the net value of the loan is dependent on rescission, weighs heavily in favor of Mr. Shaw, because without such an order Mr. Shaw could not refinance or sell his property. AER 87; AOB 51 n.14. Furthermore, given that the only way Mr. Shaw could come up with $1.2 million would be to sell his home, the district court, by requiring Mr. Shaw to pay $1.2 million in advance of trial, put Mr. Shaw in an impossible position: If he sold the home, his deed of trust would be paid off and his case would be moot. *See* AER 75, 136; AOB 61. By not

selling the home, he was unable to produce the $1.2 million that the court required him to hand over so he could go to trial.

Based on the foregoing, to the extent that the district court was required under *Yamamoto* to consider equities in the case in determining whether to condition rescission on tender, those equities do not support Lender's position. Thus, the district court would have been incorrect to require Mr. Shaw to show his ability to tender, which is all that *Yamamoto* requires, *Merritt*, 759 F.3d at 1030-31, and the court therefore certainly was wrong to require Mr. Shaw to deposit $1.2 million with the court or spend almost $50,000 to post bond for said sum. AER 3, 9, 86-87. As Mr. Shaw noted to the district court, "Yamamoto does not discuss a bond." AER 86. This Court therefore should reverse the judgment.

> **5. The *Merritt* Court, reconciling a split of authority within the circuit, abrogated the position Lender adopted that allegation of ability to tender is required at the pleading stage.**

Lender supports its argument that courts should extend *Yamamoto* to cases factually similar the present matter by taking the position that "[e]ven at the pleading stage, district courts have found that when evidence demonstrates that a borrower lacks the capacity to pay back the amount received on the loan, then the borrower cannot maintain a claim for rescission under TILA." AAB 21. It is true that some district courts in the

Ninth Circuit have taken that position, while others have not. *E.g. Botelho v.*
*U.S. Bank*, *N.A.*, 692 F.Supp.2d 1174, 1180 (N.D. Cal. 2010) (collecting
cases).

The *Merritt* decision, however, puts that intra-circuit split of authority
to rest. "Like some other district courts in this circuit, the district court in
this case extended *Yamamoto* to require that plaintiffs plead ability to tender
in their complaint. [citation] **We reject this extension**." *Merritt*, 759 F.3d
1023, at 1031 (emphasis added). The *Merritt* court further noted that "even
in a common-law equitable rescission action where the plaintiff is required
to tender first, the plaintiff need not necessarily plead ability to tender in the
complaint." *Id*. at 1031 n.8 (citing 1 Dan B. Dobbs, Law of Remedies:
Damages—Equity—Restitution § 4.8, at 463 (2d ed. 1993)).

Moreover, the district court case Lender cites does not, as Lender
represents, necessarily hold that a borrower "cannot maintain a claim for
rescission under TILA" when "evidence . . . at the pleading stage" shows the
borrower cannot pay back the loan amount. AAB 21 (citing *Alcaraz v.*
*Wachovia Mortg.*, no. CV F 08-1640 LJO SMS, 2009 U.S. Dist. LEXIS
34009, at *11-*12 (E.D. Cal. Jan. 21, 2009)). The court merely points out
that it "is not in a position, at this time, to dismiss Ms. Alcaraz' claims based
on the tender issue," and it admonishes the borrower subject to rule 11(b) of

the Federal Rules of Civil Procedure "to address the [tender] issue if she elects to amend her complaint." *Alcaraz*, 2009 U.S. Dist. LEXIS 34009, at *12. Thus, while the authority Lender cites to support its position that pleading ability to tender is required in TILA cases may once have been at best of questionable value, *Merritt* makes clear that Lender's position is no longer tenable: "[A]ny requirement that *all* TILA rescission plaintiffs allege ability to tender cannot be reconciled with the statute, *Yamamoto's* holdings, and *Yamamoto's* underpinnings." *Merritt*, 759 F.3d at 1032.

### B. By advocating for reversal of the rescission sequence when ability to tender is "not clear from the evidence," Lender relies on a standard not found in *Yamamoto*.

Lender calls for a "broad" interpretation of *Yamamoto* but is able to support its call only by reversing the standard enunciated in that case. *See* AAB 26-28. *Yamamoto* held that courts are authorized to reverse the TILA rescission-tender sequence when it is "**clear from the evidence**" that the borrower is unable to repay her loan "**no matter what**." *Yamamoto*, 329 F.3d at 1173 (emphasis added). Importantly, Lender concedes that the *Yamamoto* Court applied its holding "to [that] one situation." AAB 27.

Nonetheless, Lender advocates that this Court extend *Yamamoto* "to apply to a variety of situations where a borrower's ability to tender is questionable (i.e. **not clear from the evidence**)." AAB 28 (emphasis added)

(parenthetical in the original). Thus, Lender would have this Court reinterpret the rule in *Yamamoto* to mean that even in cases where the evidence does not make clear that the borrower cannot replay the loan – i.e., when there may be some evidence that the borrower may be able to tender – a court still should require TILA plaintiffs tender first.

Lender's position simply is not supported by case law, including *Yamamoto.* Lender's position is especially untenable considering it admits in its brief that *Yamamoto* applies to the "one situation" in which the evidence is clear that the borrower could not repay her loan. And, Lender appears to undermine its own position elsewhere in the brief, stating that the issue on review does not concern whether it was clear from the evidence that Mr. Shaw could not repay the loan "no matter what," as *Yamamoto* teaches, but "is whether Appellant put forth *evidence*, not just allegations, of an ability to tender." AAB 25; *Yamamoto*, 329 F.3d at 1173.

Moreover, courts typically avoid extending statutory rules, which is what Lender requests that this Court do. For example, a bankruptcy court declined to "read any further restrictions into the Bankruptcy Code" where a lender argued that a provision in the Bankruptcy Abuse and Consumer Protection Act of 2005 barring discharge should apply where a debtor's attempt to avoid a valueless second mortgage in a Chapter 13 bankruptcy

matter would operate, in the lender's opinion, as a "de-facto discharge." *In re Okosisi*, 451 B.R. 90, 100-01 (Bankr. D. Nev. 2011). And in *Merritt*, court refused to extend *Yamamoto* to require that plaintiffs plead in their complaint an ability to tender. *Merritt*, 759 F.3d at 1031. To summarize, in calling for an extension of *Yamamoto* to cases where not only the evidence makes clear the borrower cannot tender, but where ability to repay the loan is not clear from the evidence, Lender takes a position unsupported by authority and that would require an unwarranted extension of *Yamamoto*.

Likewise, Lender's citation to *Horton* is inapt, because Lender appears to use that case (though without a direct citation thereto) to support its legal position that a borrower, to prove ability to tender, must have funds "*immediately available.*" AAB 24 (citing *Horton v. Cal. Credit Corp. Ret. Plan*, 835 F.Supp.2d 879, 885-86 (S.D. Cal. 2011). Neither *Horton* nor any other case, however, supports that position. The Horton court merely balances the equities in the case against the legislative policy under TILA of full disclosure and the remedial-penal nature of the Act and applies those principles to the facts in that case. *See Horton*, 835 F.Supp.2d at 885-86 (citing *Palmer*, 502 F.2d at 862). Furthermore, in contrast to Lender's position, other cases, cited above, hold that borrowers have "reasonable time" up to a year within which to tender. *See supra*, part II.A.2.

### C. Further cases lender cites do not support extension of *Yamamoto* to the present facts.

Further case law Lender cites does not support its position that *Yamamoto* should be extended to cases in which it is not clear from the evidence whether the borrower can pay back the net value of the loan. *Woodworth*, for example, does state that Yamamoto "is best read" to reverse the TILA rescission sequence at trial or summary judgment if the evidence shows that the "plaintiff's ability, willingness or intent to [tender] is inherently questionable." *Woodworth v. Bank of Am.*, *Nat.'l Ass'n.*, No. 09-3058-CL, 2011 U.S. Dist. LEXIS 43255, at *29-*30 (D. Ore March 23, 2011); AAB 25-26.

That reasoning, however, supports only the court's conclusion that ability to tender need not be alleged at the pleading stage. *Id*. at *30. More importantly, that *Woodworth* Court's position regarding tender conflicts with *Merritt's* clarification of *Yamamoto* that courts may require a borrower only "to provide **evidence** of ability to tender as a condition for denial of a summary judgment motion advanced by the creditor." *Merritt*, 759 F.3d at 1030-31 (Citing *Yamamoto*, 329 F.3d at 1071-73) (emphasis added).

*Kratz*, cited by Lender to support its contention that conditioning rescission on tender is necessary to avoid "unduly harsh penalties" a lender would suffer by being reduced to an "unsecured creditor, AAB 15-16

(internal quotation marks omitted), likewise does little to support Lender's position. First, *Kratz* is factually distinguishable. There, the borrowers sought to tender their home, but the borrowers were "upside down" on the home, owing the lender about $300,000 more than the property was worth. *Kratz*, 2009 U.S. Dist. LEXIS 86479, at *4, *15.

The borrowers also sought a further "'equitable' remedy that would extinguish their repayment obligation and allow them to keep their house." *Id*. at *16. Here, in contrast, Mr. Shaw sought no such further "equitable" remedy, and the evidence the district court admitted shows that the value of his home "more than covers tender." AER 9 n.3, 70-71, 88, 134-36.

Moreover, the *Kratz* Court found that it was clear from the evidence that the borrowers could not repay the loan and therefore applied Yamamoto in the limited manner Mr. Shaw urges here. *See id*. at *4, *10-*11, *15. Thus, *Kratz* does not support Lender's position.

Finally *Briosos* does not stand, as Lender avers, for the proposition that borrowers are "required to pay the lender what they received in the original mortgage transaction (minus interest, finance charges, etc.) and at the very least, a borrower must tender the principal balance of the loan." AAB 16 (citing *Briosos v. Wells Fargo Bank*, 737 F.Supp.2d 1018, 1027-28 (N.D. Cal. 2010)). It merely dismissed a borrower's TILA complaint with

leave to amend "to plead allegations regarding his ability to tender," *Briosos*, 737 F.Supp.2d at 1029. That position no longer is valid in the Ninth Circuit. *Merritt*, 759 F.3d at 1031. Accordingly, *Briosos* also is unhelpful to Lender.

### III. Lender's references to Mr. Shaw's bankruptcy are irrelevant because Mr. Shaw did not claim he had cash in hand, but he did possess adequate equity in the property to cover tender, which the trial court acknowledged.

Lender represents that Mr. Shaw "failed to offer any evidence that he had funds immediately available to support his claim of an ability to tender," and that filings in his bankruptcy case "demonstrate that [he] had no ability to tender the required funds." AOB 5-6. Lender further avers that Mr. Shaw's bankruptcy statements "are essential as they show Appellant's true financial condition and squarely contradict Appellant's 'claim' of an ability to tender." AAB 20; *see* Appellee's Excerpts of Record 94-150.; AER 221, 227-228.

Lender, relying on these bankruptcy case documents, has argued that Mr. Shaw lacked "cash funds" to tender the $1.2 million net loan value. *E.g.* AER 58. However, as argued at the trial level and mentioned in his opening brief, Mr. Shaw's position has been that Lender's contentions that he lacked cash and therefore could not demonstrate the ability to tender constitute a "meritless red herring." AER 48; AOB 15. Mr. Shaw has been consistent in averring that his ability to tender is based on the fact, grounded in evidence

the district court admitted, that his house is worth between approximately $1.6 million and $2.1 million, which is far greater than the $1.2 million tender amount. *See generally* AOB 17-18 and record citations contained therein; AER 9. As such, Mr. Shaw's bankruptcy records and what they may "prove" regarding his lack of cash-in-hand at the relevant times do absolutely nothing to show that Mr. Shaw was unable to tender by using the equity in the secured property. In short, Lender's arguments related to Mr. Shaw's bankruptcy should be disregarded as irrelevant to the issues presented in this case. AOB 6-7; *cf*. AAB 2.

## CONCLUSION

Based on the foregoing, Mr. Shaw respectfully requests that this Court reverse the district court's grant of summary judgment as set forth in his opening brief, at 61-62.


Dated: November 3, 2014                    LAW OFFICE OF CHRIS FORD
                                           NORMAN E. SHAW, ESQ.
                                           Attorneys for Plaintiff/Appellant


                                           ____s/ Chris Ford_____
                                           By Chris Ford, Esq.

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rle 32-1, the attached opening brief is proportionately spaced, has typeface of 14 points or more and contains 6,943 words, according to Microsoft Word for Mac 2011, Version 14.4.2, the word processing system used to prepare the brief.

Dated: November 3, 2014        LAW OFFICE OF CHRIS FORD
NORMAN E. SHAW, ESQ.
Attorneys for Plaintiff/Appellant

_____s/ Chris Ford_____
By Chris Ford, Esq.

*Shaw v. U.S. Bank*, no. 14-55020

CERTIFICATE OF SERVICE

I, Chris Ford, Esq., hereby certify that on **November 3, 2014** I served copies of

**Appellant's Reply Brief** on the following persons by way of CM/ECF:

U.S. BANK, N.A. AS TRUSTEE, SUCCESSOR IN INTEREST TO BANK
OF AMERICA, N.A., AS TRUSTEE SUCESSOR BY MERGER TO
LASALLE BANK, N.A., AS TRUSTEE FOR WAMU MORTGAGE
PASS-THROUGH CERTIFICATES SERIES 2006-AR11 (sued as BANK
OF AMERICA, N.A. and U.S. BANK, N.A.)
Sung-Min Christopher Yoo
AlvaradoSmith, APC
1 MacArthur Place
Santa Ana, CA 92707

And on the following person by way of email: **ns@normanshaw.com**

Norman Shaw
308 Corto Street
Solana Beach, CA 92075

I declare under penalty of perjury under the laws of the United States of America
and of the state of California that the above is true and correct. Executed on **November 3,
2014**, at Phoenix, Arizona.

_____/s/ Chris Ford_____
Chris Ford, Esq.
LAW OFFICE OF CHRIS FORD
125 East Coronado Road
Phoenix, AZ 85004
602-688-5571
cford@azbar.org